which is Raguex-Chang v. Garland, and for the petitioners, I think we have Roger Green, and for Respondent Garland, we've got Dana Camilleri, and I apologize if I'm mispronouncing anyone's name. It's kind of a tough thing to figure out on a first read, but why don't we proceed with the petitioner. Judge Gould, before we begin, I'm looking at the screen and I can see Judge Gould and Judge Collins. I don't see myself. Can the advocate see me? Yes, Your Honor. Okay, if I'm on the screen for them, I'm fine then. Not to worry. Okay, what we have here is we've got a split screen that has you and has the podium in the courtroom. Okay, we're fine then. I'm just worried that they couldn't see me, but all set to go. Okay, Mr. Green, please proceed the case. It is set for 10 minutes per side. Good afternoon, Your Honors. May it please the Court, my name is Roger Green. We're here on this petition for review following the Board's 2015 denial of petitioner's asylum, withholding, and CAP claims. The Board, in denying this Indigenous woman from Guatemala, made a finding that she not met her burden for asylum, withholding, and CAP. In large part, this Board's analysis finding in part found that she did not have a cognizable group, and second, even if the her Indigenous ethnicity were to be a group they found no nexus or on account of. The 2015 decision also found that this petitioner's refusal to submit to the violence, not a political opinion, and her claim was denied. Now, in some, especially focusing on the second group of Indigenous women from Guatemala or Indigenous ethnicity, the Board fails to take into account the case law in terms of its analysis in adjudicating and applying for this claim. Now, MEVG and WGR were listed, but they were not accurately applied. An accurate application would take into account that the particular social group was not addressed in isolation, but instead in the context of the society. It's a fact-specific finding in terms of what the Board was supposed to look at. Can I interrupt for just a minute? This is Judge Fletcher speaking. Assume that Indigenous women is a cognizable social group as the Board was willing to assume, but then the Board held no nexus. When her father was killed, I gather that the evidence is he was killed because he had money from the sale of a crop. She was then later, some years later, threatened on the telephone with being treated just like her father was treated if she did not give money. In either of those instances, was the fact of Indigenous person for her father or Indigenous woman for her mentioned? It's my understanding it was not. So, how do we then get a connection for both the death of her father and the death threat to her that it was on account of a protected group? Thank you for asking, Judge Fletcher. In this instance, this is where we rely heavily on the circumstantial evidence in terms of this family did have some renown. Did you have the right renown in the sense where after nine years, it would still be known that this father, Alfonso, I believe is his first name, was going to be killed by the gangs. Nine years later, his daughter would be given a death threat. Now, if we take that in terms of the societal context, in terms of the marginalization of the populace, the mistreatment, the series, the history, especially, and I think this ties in with the immigration judge's initial findings that this petitioner has lived a life where she's endured the derision, the discrimination, as well as her family of her people. And I believe that these are the things that circumstantially would tie in the nexus of why she was targeted. Okay, thank you. Thank you, Otter. Now, also, it's of note that the board themselves note in, I believe it's on page 223 of WGR, they note the importance of the nexus, especially in regards to determining the on account of basis. Now, when they discuss the nexus, the perception of the persecutor, unlike in determining whether or not the group exists, the nexus is far, the terms of the perception of the persecutor will be held a greater role in determining whether persecution is inflicted on account of the victim's membership. And so it's in terms of the account of basis, I believe that the perception of the persecutor plays a large part in what eventually happened to this young lady. And in terms as a factual issue, I believe there's significant tension in terms of the testimony that she gave in court in terms of who was targeted on the bus. Now, in terms of at one point in her testimony, in her earlier testimony, she states, was everyone else on the bus also indigenous? And that is page 125 of the CAR, the Certified Administrative Record, Your Honor. And she says, yes. Now, she later clarifies before the judge on page 127, when she discusses how many times that the robberies occurred, she said around five times. Now, on those five times, was everyone on the bus also indigenous? And she essentially says, there were some who were not. Now, this leads to the sheer possibility that she's describing a situation, this is a sheer possibility, that when she says everyone on the bus was targeted, describing five bus robberies, she's talking four out of five of those bus robberies could have been all indigenous. Now, the one bus robbery that was mixed, it could have been 90% of the passengers indigenous, 10% non-indigenous. And the point of this, Your Honors, is that in determining the nexus... But if there's a mix, at least in some of them, and the IJ made a finding that was upheld by the board, that everyone on the buses was targeted for robbery, including non-indigenous individuals. That's the finding that's upheld according to the BIA ruling. We can't set that aside under the substantial evidence standard, if in fact, some of the buses were mixed, and they just wanted money from everyone who they could get their hands on. Well, if that were the case, Your Honor, then that finding would be at sheer tension with the testimony she made before the court in which she said everyone else on the bus was also indigenous. But you just read a portion where she said not all of them on all five buses were, that there were some on some of the bus rides that were non-indigenous, correct? Isn't that what you just said? Well, Your Honor, in terms of to be completely accurate, her answer was, and on all those five times, everyone on the bus was indigenous. She answers, there were some who were not. And now she doesn't say how many of those bus were not, were non-indigenous. Right, but the fact that there were some who were non-indigenous who were also robbed is substantial evidence to support a finding that the goal was to just to get money from whoever was there, whether they were indigenous or not. Well, if you look at this, and Your Honor, thank you so much, Judge Collins, for noting this, because if we look at the societal evidence behind it, we would see that there's large marginalization of these people. And it would match with the facts of the motivation for the gangs to go target this particular group. Now, in this manner, they're not, if they're after money, they're after it from the most easily vulnerable members. And that would be from respondents, social group positive. And this is where we need to look, Judge Collins, where we need to look at those societal evidence submitted. And counsel at trial level submitted various Department of State report discussing the marginalization of these people. Her credible testimony also discusses her beleaguered history. And Your Honor, if I can just note one other thing, I believe that we noted in our 28-J letter that, you know, it can also constitute a political opinion. She continued to identify with this group. She continued to wear her indigenous clothing, the hoopoe. Counsel, did you want to hold some time for rebuttal? Yes, Your Honor, right now. Okay, well, you're down to less than a minute. We'll have the quick round the time up to one minute to give you a full minute of rebuttal. So you can plan on that. Thank you, Your Honor. I'll give you more if I could, but we're sort of in a jam today. Thank you, Judge Gould. We'll go ahead with Ms. Camilleri. Good afternoon, Your Honors. This is Dana Camilleri. May it please the Court, this is Dana Camilleri for the Attorney General. Petitioner has not produced any evidence that would distinguish her first two proposed social groups from those that have been repeatedly rejected by the Court and the Board. In terms of her third proposed social group comprised of indigenous women targeted for extortion, the agency assumed that that was a cognizable group, but found that she did not show it had any nexus. Now, one of the problems in this case is, you know, it's been sitting for a while, and so we're reviewing a BIA decision from seven years ago. And the BIA is very distinction between withholding and asylum, but that's not reflected in the IJ or BIA's ruling here. Do we need to send it back in light of that? Your Honor, no. Actually, this decision from the Board and the IJ was two years before Barajas, which is why it's not referenced in the case. As we noted in our 28J, we believe that this is actually not a situation where it needs to go back down, because instead of looking at the difference between one central reason and a reason, there's simply no reason here. They found that the motivation was money. That's what the agency found. That's what she testified to. And albeit in unpublished cases, there have been several that were sitting during this period that had been decided pre-Barajas, and that the Court decided not to remand because there simply was no evidence of any nexus, and therefore it fell more under the And that's what we think is happening here. And I would like to also emphasize, at the end of her direct examination during her merits hearing testimony, her counsel asked her why she was afraid to return to Guatemala. She says that they could kill me, the MS. Why would they want to kill you? As I said, the money. And then her counsel tried, well, are you afraid of anything else in Guatemala? Just that. She is unfortunately a victim of generalized violence in Guatemala, but she simply has not shown that her status as an indigenous woman is why she was targeted for this harm. She said repeatedly that her father was killed for money, and that the threatening letter was because they thought since she had come of age, she might have money. And as has already been pointed out, I believe after the clarifying questions from the immigration judge, it's clear that at least during some of these robberies on the bus, there were non-indigenous people who were also targeted for robbery. So, unfortunately, she just simply has not shown any eligibility for relief here. And as I said, we don't think Barajas applies in this situation. Are there any other questions for me? I have no questions. None for me. Thank you. Okay. Well, thank you very much. I think I've covered everything and I appreciate the time. Okay. Thank you very much. Go back to Mr. Green. Give us a minute of rebuttal, please. Thank you. Thank you, Your Honor. Your Honor, I just want to quickly note in the 28J letter, again, this is what this decision has been suffering from. It's only getting a generalized view. None of the, all of the unpublished cases provided by government counsel are all, they're not Guatemala. You have four from Mexico, one from El Salvador. This is not Guatemala. In this instance, the board is specifically saying that the particular social group should not be addressed in isolation, but in the context of the particular country. And it should, what would constitute persecution in one country may not be in another. These are not the countries. Further, Your Honors, if I can note that she's maintained, she's maintained her membership in the society, and it's important that we see the societal evidence on how it would affect her life, especially in regard to the one central reason. That's a less demanding standard, if as an alternative. However, we believe that there can be more than one central reason for the asylum context, as so long as one is in a protected ground. Thank you, Your Honors. Thank you. I want to, again, thank both counsel for petitioner and counsel for respondent for your well-stated arguments. The Rigueur Chang case shall now be submitted, and the parties will hear from the panel in due course.
judges: FLETCHER, GOULD, COLLINS